UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN WYDAJEWSKI,<br>Plaintiff,<br>v.<br>WARDEN, et al.,<br>Defendants. | Case No. 1:26-cv-01100-HBK<br><br>ORDER TO RANDOMLY ASSIGN CASE TO A DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS TO ALLOW PLAINTIFF TO PROCEED ON COGNIZABLE CLAIM AND DISMISS ALL REMAINING CLAIMS AND DEFENDANTS[1]<br><br>(Docs. 11, 13)<br><br>FOURTEEN-DAY OBJECTION PERIOD |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Plaintiff proceeds on his First Amended Complaint. (Doc. 11). As explained below, the First Amended Complaint states a cognizable Eighth Amendment failure to protect claim against Defendant John Doe #4 but fails to state any other claims. The undersigned therefore recommends that this action proceed only on that claim and that all remaining claims and defendants be dismissed without further leave to amend.

BACKGROUND AND SUMMARY OF OPERATIVE PLEADING

Plaintiff Christian Wydajewski filed this action on February 2, 2026. (Doc. 1). His initial

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Cal. Local Rule 302.

complaint asserted Eighth Amendment claims against John Doe #1, the warden of Pleasant Valley State Prison ("PVSP"); the Institutional Classification Committee ("ICC") members as of January 4, 2024; Correctional Counselor II Franco; John Doe #2, the Search and Escort Officer assigned to Bravo Yard on January 4, 2024; Correctional Counselor I Meza; and the Head of the Division of Adult Institutions—Classification Services Unit ("CSU").

On May 26, 2026, the undersigned screened the initial complaint under 28 U.S.C. § 1915A and found a cognizable Eighth Amendment failure to protect claim against John Doe #1, but no other cognizable claim. (Doc. 10). Plaintiff was directed to file an amended complaint, elect to proceed only on the cognizable claim, or stand on his initial complaint. (*Id.* at 8).

On August 10, 2026, Plaintiff filed a First Amended Complaint. (Doc. 11, "FAC"). The FAC concerns the same events at PVSP as in the initial complaint, and names the following defendants: John Doe #1, the assistant warden or acting warden as of January 4, 2024; John Doe #2, the Correctional Administrator/Alternate Chair Person; John Doe #3, a Correctional Captain; John Doe #4, the Search and Escort Officer assigned to B-yard on January 4, 2024[2]; Correctional Counselor II Franco; John Doe #5, the ICC Chairperson on February 1, 2024; John Doe #6, Correctional Administrator/Alternate ICC Chairperson on February 1, 2024; John Doe #7, Correctional Captain who served on the ICC on February 1, 2024; and Correctional Counselor II Meza, who served on the ICC on February 1, 2024. (*Id.* at 4–5). The FAC asserts an Eighth Amendment failure to protect claim arising from Plaintiff's placement in a general population after his transfer to PVSP. Plaintiff alleges that this placement exposed him to a heightened risk of assault, but does not identify a particular inmate who threatened him or a specific time or location at which an assault was likely to occur.

Plaintiff alleges that, upon arriving to PVSP from a non-designated programming facility ("NDPF"),[3] he was housed in restricted housing. (*Id.* at 7). An unnamed doctor and correctional

---

[2] This defendant was named John Doe #2 in the initial complaint. (*See* Doc. 1 at 3).

[3] According to CDCR's website, "[i]n November 2022, CDCR codified into regulations Sensitive Needs Yard (SNY) and Non-Designated Programming Facilities (NDPF) programs. SNY is a designation for incarcerated people who have safety concerns regarding living on a General Population (GP) yard, while NDPFs house people together regardless of their GP or SNY status to afford incarcerated people greater access to rehabilitative programs." https://www.cdcr.ca.gov/blog/cdcr-week-in-review-december-16-

staff warned him that placement in general population would endanger him because of his prior NDPF placement. (*Id.* at 7–8). The doctor allegedly advised him that B-yard posed a greater danger than C-yard. (*Id.* at 8).

On January 4, 2024, Franco told Plaintiff that he would appear before the ICC for a housing determination. (*Id.* at 9). Plaintiff requested placement on a special needs yard ("SNY") or continued restrictive housing. Franco responded that neither option was available and allegedly told Plaintiff that he would return to restrictive housing but first had to complete the ICC process. When Plaintiff requested C-yard rather than B-yard, Franco allegedly responded that paperwork already designated B-yard and that the distinction did not matter because Plaintiff would remain in general population.

Later that day, Plaintiff appeared before an ICC consisting of John Does #1 through #3, Franco, and the unnamed doctor. (*Id.* at 9–10). The ICC accepted Franco's recommendation to place Plaintiff on B-yard. Plaintiff asked Doe #1 how the ICC could place him in harm's way. Doe #1 allegedly responded that no alternative placement was available because Plaintiff lacked an SNY designation. (*Id.* at 10). Although Plaintiff alleges that the ICC members knew general-population inmate would attack him, he acknowledges that they did not know the identity of any potential assailant.

John Doe #4 later escorted Plaintiff and another inmate to B-yard. (*Id.* at 11). Plaintiff alleges that Doe #4 joked about the "gravity" of the situation, opened the gate, and instructed Plaintiff to walk inside. Upon entering B-yard, Plaintiff and the other inmate were attacked and stabbed by several inmates. Doe #4 closed the gate and deployed OC spray. After the attack ended, Plaintiff and the other inmate were airlifted to a Fresno hospital with life-threatening injuries.

Plaintiff further alleges he later learned of an informal agreement between B-yard inmates and officers. Under that agreement, inmates accompanied by an officer walking beside them into B-yard were deemed "good" and were not to be attacked; inmates who were entered without an

---

2022/.

officer beside them "were okay to attack."

After returning to PVSP, Plaintiff was placed in restricted housing and interviewed several times about the assault. (*Id.* at 13). He denied gang affiliation or gang-related conflicts. An interviewer allegedly stated that SNY placement was warranted because Plaintiff had been attacked in general population because of his NDPF status.

On February 1, 2024, Meza told Plaintiff that the ICC would consider his SNY placement and security needs. (*Id.* at 13–14). Plaintiff was not permitted to attend the meeting. (*Id.* at 14). Meza later informed him that the ICC had denied SNY placement. (*Id.*). According to the FAC, John Does #5 through #7 and Meza served on that ICC.

On August 10, 2026, the undersigned screened the FAC and found a cognizable Eighth Amendment failure to protect claim against John Doe #4, but no other cognizable claim. (Doc. 12 at 9). The undersigned concluded that further leave to amend awas unwarranted because the FAC retained the deficiencies identified in the initial complaint. (*Id.* at 8–9). Plaintiff was directed to elect to proceed only on the cognizable claim or stand on the FAC. (*Id.* at 9). On September 11, 2026, Plaintiff delivered a response to correctional officials for mailing, electing to stand on the FAC. (Doc. 13).

## APPLICABLE LAW

### A. Screening Requirement

Because Plaintiff commenced this action while incarcerated, the Court must screen the complaint under the Prison Litigation Reform Act ("PLRA"). 28 U.S.C. § 1915A(a). The Court must identify any cognizable claims and dismiss any portion of the FAC that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. *Id.* § 1915A(b)(1)-(2).

Federal Rule of Civil Procedure 8 requires "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Evidence of the claim is not required under Rule 8 at the pleading stage. *Berk v. Choy*, 607 U.S. 187, 193 (2026). To survive screening, the complaint must contain sufficient factual matter to state a claim that is plausible on its face—i.e., facts permitting the reasonable inference that each named defendant is liable for the

alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969. Threadbare recitals of the elements of a cause of action and conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678. Courts likewise are "not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

At screening, the Court accepts factual allegations as true, construes the pleading liberally, and resolves doubts in Plaintiff's favor. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). The Court need not accept conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). The Court also need not permit frivolous claims—ones that lack "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

The Federal Rules permit multiple claims against a single defendant and allow joinder of multiple defendants if the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and share common questions of law or fact. Fed. R. Civ. P. 18(a), 20(a)(2). Claims that arise at the same institution are not necessarily properly joined; instead, the claims must be related. *Camposeco v. Bordeaux*, No. 1:19-cv-01330-BAM, 2020 WL 5984420, at *5 (E.D. Cal. July 31, 2020), *findings and recommendations adopted sub nom. Camposeco v. Boudreaux*, 2020 WL 5983157 (E.D. Cal. Oct. 8 2020). Unrelated claims against unrelated defendants may not proceed in a single action and must be brought, if at all, in a separate lawsuit. *See id.* at *6.

B. Section 1983

Section 1983 allows a private citizen to sue for the deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Manuel v. City of Joliet*, 580 U.S. 357, 362 (2017). To state a § 1983 claim, a plaintiff must show that a defendant acting under color of state law caused the deprivation of a federal right. *See* 42 U.S.C. § 1983; *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). The causation requirement is satisfied by showing either the defendant's

personal involvement in the deprivation or a sufficient causal connection between the defendant's supervisory conduct and the deprivation. *See King v. Cnty. of L.A.*, 885 F.3d 548, 559 (9th Cir. 2018). Thus, personal participation is necessary, and the mere presence or generalized involvement is insufficient. *See Jones v. Williams*, 297 F.3d 930, 938–39 (9th Cir. 2002); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

"There is no respondeat superior liability under section 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989) (citation omitted). A supervisor may be held liable only if the supervisor personally participated in the constitutional violation, directed it, or knew of the violation and failed to act to prevent it. *Id.*; *see also Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011).

C. Eighth Amendment Claims

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *Helling v. McKinney*, 509 U.S. 25, 31 (1993), which prohibits "cruel and unusual punishment," *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks and citations omitted).

To state a claim, a prisoner must allege that the defendant acted with deliberate indifference—that is, the official knew of and disregarded a substantial risk of serious harm "by failing to take reasonable measures to abate it." *Id.* at 834, 847; *see Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). Deliberate indifference requires more than negligence or error; it reflects "obduracy and wantonness." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

An official's knowledge of a substantial risk is a factual question and may be inferred from circumstantial evidence, including the risk's obviousness. *Farmer*, 511 U.S. at 842. An official need not "believe to a moral certainty" that an inmate faces harm before taking preventive measures, but he must have "more than a mere suspicion that an attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (internal quotation marks and citation omitted). "[S]peculative and generalized fears of harm" are insufficient. *Williams v. Wood*, 223 F. App'x

670, 671 (9th Cir. 2007) (citing *Farmer*, 511 U.S. at 843).

ANALYSIS

A. Claims Against John Does #1 through #3 and Franco

Plaintiff alleges that John Does #1 through 3 and CCII Franco were deliberately indifferent to his safety by assigning him to B-yard. He contends that his prior NDPF placement made him vulnerable to assault and that these defendants knew of that risk.

To state a failure to protect claim, Plaintiff must allege facts showing that each defendant knew of and disregarded a substantial risk to his safety. A generalized fear of assault, without facts supporting the defendants awareness of a particularized risk, is insufficient. *See Ward v. Hartley*, No. 1:10-cv-00186-GSA, 2010 WL 5288468, at *3 (E.D. Cal. Dec. 17, 2010) (finding that a "generalized fear of placement in the general population is insufficient to hold any individual defendant liable for placing Plaintiff on a general population yard").

Although officials may be liable for exposing an identifiable group of vulnerable prisoners to known dangerous conditions,[4] prior placement in one type of yard does not, without more, establish a substantial risk upon placement in another. *See Borowiec v. Jones*, No. 2:23-cv-2173-DB, 2024 WL 1622932, at *3 (E.D. Cal. Apr. 15, 2024) (finding allegations that all SNY inmates face a risk from all non-SNY inmates "too general and speculative" ); *cf. Dixon v. Lavin*, 234 F. App'x 814, 815 (9th Cir. 2007) (affirming judgment on the pleading where the alleged danger upon returning from a sensitive needs yard to general population was too speculative); And an allegation that all guards knew placing certain inmates with an SNY population would result in an attack reflected only a generalized fear insufficient to state a failure to protect claim. *Luevano v. California*, No. 1:23-cv-1749-BAM, 2024 WL 2801917, at *3 (E.D. Cal. May 31, 2024), *findings and recommendations adopted*, 2024 WL 3276229 (E.D. Cal. July 2, 2024).

The FAC does not state a cognizable claim against these defendants. Plaintiff alleges a generalized fear of assault based on his prior NDPF placement and subsequent assignment to B-

[4] *See Green v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004); *Weiss v. Cooley*, 230 F.3d 1027, 1032, 1032 (7th Cir. 2000); *Walsh v. Mellas*, 837 F.2d 789, 797–98 (7th Cir. 1988); *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 222 (S.D.N.Y. 1995).

yard. He acknowledges that these defendants did not know the identity of any potential assailant. He alleges no gang-related threat, known enemy, prior assault, informant status, or other specific safety concern known to them. Nor does he allege facts identifying a vulnerable group exposed to dangerous conditions that these defendants knew existed.

Plaintiff asserts that all CDCR officials know general population inmates attack former NDPF and SNY inmates upon reintegration. But he offers only conclusory allegations that *these* defendants knew of such a risk. Although he told them that B-yard placement would endanger him, he does not allege that he explained a specific basis for that concern or facts supporting an inference that they independently knew of that risk.

Plaintiff further alleges that the defendants assigned him to B-yard was because he lacked a SNY designation and no alternative placement was available. Taken together, these allegations do not plausibly show that John Does #1 through #3 or Franco knew of and disregarded a substantial risk to his safety. *See Williams*, 223 F. App'x at 671.

The undersigned therefore recommends dismissing the claims against John Does #1 through #3 and CCII Franco under § 1915A(b)(1) for failure to state a claim.

B. Claim Against John Does #4

Plaintiff alleges that John Doe #4 escorted him to B-yard, commented on the seriousness of the situation, and instructed him to enter without an officer walking beside him. Plaintiff further alleges that staff and inmates understood this practice to signal that an inmate could be attacked. He was attacked immediately after entering the yard.

Liberally construed, these allegations support a reasonable inference that Doe #4 knew of and disregarded a substantial risk of serious harm. The undersigned, therefore, recommends allowing Plaintiff to proceed on his Eighth Amendment failure to protect claim against Doe #4.

C. Claims Against John Does #5 through #7 and Meza

Plaintiff alleges that the ICC violated his constitutional rights by denying SNY placement after his life-threatening assault. He also challenges his exclusion from the February 1, 2025 ICC meeting.

An inmate has no constitutional right to a particular housing assignment or classification.

*See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). General population placement does not, without more, impose an atypical and significant hardship creating a protected liberty interest. *See Keenan v. Hall*, 83 F.3d 1083, 1088–89 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987). Housing and classification decisions ordinarily fall within prison administrators' discretion. *McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)); *see also Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998).

Plaintiff does not allege that the denial of SNY placement was motivated by retaliation, discrimination, or another unconstitutional purpose. His disagreement with that classification decision, standing alone, does not state a § 1983 claim. *See Hernandez*, 833 F.2d at 1318.

Plaintiff also fails to state a due process claim based on his exclusion from the ICC meeting. Without a protected liberty interest in the challenged classification or housing assignment, he had no corresponding due process right to attend that meeting. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (concluding that the standard due process analysis requires an identifiable liberty interest before the challenged procedures will be analyzed); *Jackson v. Pompan*, No. C-12-6049 SI, 2013 WL 1003603, at *4 (N.D. Cal. Mar. 13, 2013) (concluding that plaintiff had no right to appear at a classification hearing).

The undersigned therefore recommends dismissing the claims against John Does #5 through #7 and Meza under § 1915A(b)(1) for failure to state a claim.

D. Leave to Amend

Courts ordinarily grant leave to amend freely, considering factors such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, and futility. *Schwartz v. Miller*, 153 F.4th 918, 932–33 (9th Cir. 2025). A pro se complaint should not be dismissed without leave to amend unless it is absolutely clear that amendment cannot cure its deficiencies. *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam) (internal quotation marks and citation omitted).

Leave may be denied as futile when additional facts consistent with the challenged pleading could not cure the deficiency. *DeSoto v. Yello Freight Sys., Inc.*, 957 F.2d 655, 658 (9th

Cir. 1992). Leave may be also denied where amendment would require allegations inconsistent with prior pleadings and the judicially noticed record. *See, e.g.*, *Stone v. Travelers Corp.*, 58 F.3d 434, 437 n.1 (9th Cir. 1995).

Further amendment would be futile here. Plaintiff has already amended once after receiving notice of the deficiencies that remain in the FAC. The initial screening order explained that his generalized expressions of fear to Franco and the ICC members did not state a failure to protect claim. It also explained that his post-attack classification allegations did establish a protected liberty interest or identify an unconstitutional reason for the housing decision. (Doc. 10 at 5–7).

Those deficiencies persist in the FAC. Their repetition is "a strong indication that the plaintiff[] [has] no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotation marks and citation omitted). The undersigned therefore recommends denying further leave to amend as futile.

Accordingly, IT IS ORDERED:

The Clerk of Court shall randomly assign this case to a district judge for consideration of these Findings and Recommendations.

It is further RECOMMENDED:

1. This action proceeds only on Plaintiff's Eighth Amendment failure to protect claim against Defendant John Doe #4, the Search and Escort Officer assigned to B-yard on January 4, 2024.

2. All remaining claims and defendants be dismissed for failure to state a claim.

3. Further leave to amend be denied as futile.

4. Service be directed on John Doe #4.

NOTICE TO PARTIES

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. *Id.*; Local Rule 304(b). The document should be captioned,

"Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed fifteen (15) pages. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014). These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1) should not be filed until entry of the District Court's judgment.

Dated: October 14, 2026

Helena M. Barch-Kuchta

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE